Opinion by
Mr. Chief Justice Moore.
Plaintiffs in error will be referred to as the defendants or by name. They were jointly charged in an information containing six counts. A Motion to Dismiss and to Strike Certain Counts was filed by one of the defendants and thereafter the district attorney withdrew counts two, four, five and six of the information leaving only the counts charging defendants with having committed the crimes of assault to murder and assault to rob.
Upon entry of defendants’ pleas of not guilty the case was tried to a jury. Verdicts were returned finding the defendant Velasquez guilty of assault to murder, assault with a deadly weapon, and assault to rob. The defendant Castro was found guilty of assault to rob and assault with a deadly weapon.
Each of the defendants filed motions in the alternative, for judgment of acquittal notwithstanding the verdict, for arrest of judgment or for a new trial. At the hearing on these motions the district attorney joined *268 with the defendants in moving to set aside the guilty verdicts of assault to murder and assault with a deadly weapon. These verdicts were set aside, leaving only the guilty verdicts on the charge of assault to rob. As to these verdicts the motions of the defendants were denied, and judgment entered thereon. The defendants were sentenced to the state penitentiary for not less than twelve nor more than fourteen years.
Before discussing the question submitted for determination, we deem it advisable to include a statement of facts as set forth in the brief of the Attorney General which is fully supported by the record. We quote the following:
“The People’s case in chief revealed that on December 19, 1963, at three o’clock in the afternoon, the victim, Herbert Daniel Brown, was behind the counter in his grocery store waiting on two girls, when he saw two men come into the store. Each wore a ‘vinyl-type’ jacket and a matching ‘hunter’ hat. They stood there for a few moments, looking around, when suddenly, one of them came around the counter, pulled out a gun and said, ‘This is a stick-up.’
“Danny Brown was equipped for such emergencies. He carried a .38 stubnosed revolver in a belt holster under his apron, and when the robber started firing at him, he shot back. Although Brown was shot between two fingers and in the shoulder, he wounded the gunman and continued firing at the bandits as they fled the store.
“Brown was taken to the hospital. While there he was shown eight or nine pictures for identification purposes. He selected the picture of defendant Velasquez as the gunman, although the picture showed a clean-shaven man and the gunman wore a mustache. Brown later identified Velasquez in a police lineup and again at the trial.
“Although Danny Brown could not identify the other participant in the crime, Fred Bergamo could and did. *269 Bergamo, who was parked on the corner by Danny’s Market, heard what sounded like a shot and saw two men come running out of the grocery store. He got a good, look at the defendant Castro and identified him both at the police line-up and at the trial.
“Larry Bennington and his girl friend, Jacquelyn Lang, were just leaving Danny’s Market as the holdup occurred, and each of them identified both defendants as the men who fled from the store after the shots were fired. Larry Bennington said that the two men drove away in a 1955 or 1957 white and green Oldsmobile. Another witness similarly described the get-away car. Both witnesses thought that People’s Exhibit F looked like a picture of this car.
“Manuel G. Sena confirmed that People’s Exhibit F was indeed a picture of the car in which the defendants had fled the scene of the crime. Mr. Sena testified that he had known both defendants for many years and that on December 19, 1963, he had loaned them his wife’s automobile, a 1956 white and green Oldsmobile. The two defendants took the automobile at 1:45 or 2:00 P.M. and Mr. Sena did not see them again until nearly 4:00 that afternoon. At that time, Castro came in through the back door at Manuel Sena’s home and said that Velasquez was hurt.
“Mr. Sena found Velasquez in the garage, bleeding from wounds on his right shoulder and on his fingers. He took Velasquez from the garage to the basement, where he tried to attend to his wounds. There was blood all over the back seats and upholstery of the car. Both defendants said that the grocer, Danny Brown, had shot Velasquez. The defendants left the Sena home about 6:00 P.M. but Castro returned about 3:00 A.M. the next morning.
“Detective Sergeant Charles J. Kennedy, of the Denver Police Department, arrived at Manuel Sena’s home about 3:15 or 3:30 in the morning of December 20th. He found blood-stained bedding in the kitchen and *270 blood stains and particles of flesh on the back mat of the Sena’s 1956 Oldsmobile. While Sergeant Kennedy was conducting his investigation at the Sena residence, John Jack Castro appeared at the door and knocked. Kennedy immediately placed Castro under arrest.
“Somewhat later the same morning, Velasquez was arrested and was ■ treated at Denver General Hospital for bullet wounds in the right shoulder and left index finger. Officer C. D. Brannan of the Denver Police visited with Velasquez at the hospital and noted that he was wearing a mustache.
“The defense then proceeded with its case. Three witnesses were called on behalf of both defendants. The testimony of two of these was intended to controvert the People’s evidence of a subsequent fight between the defendants and Manuel Sena, during which the defendants attempted to dissuade the Senas from giving testimony at this trial.
“Although neither of the defendants testified in his own behalf, there was evidence that Castro denied participation in the crime, claiming to have spent that afternoon downtown, ‘in and out of bars on Curtis and Larimer’ and the evening in a movie. He claimed that his arrival at the Manuel Sena residence at 3:00 in the morning of December 20 was mere coincidence; he was in fact looking for a former girl friend named Gloria Jacques.
“Velasquez’ defense was that he was shot by Gillie Roy Garcia between 4:00 and 4:30 P.M. on December 19, 1963, when the two confronted each other in an alley near 7th and Champa Streets. Garcia fired three times at Velasquez and was ‘pretty sure’ he hit him because he saw him staggering. According to Garcia, the shooting resulted from a misunderstanding between him and Velasquez over one Nathan Avalos, a friend of Velasquez, whom Garcia was accused of shooting.
“Velasquez’ only other witness was his girl friend, *271 Dolores Cordova, whose testimony was not inconsistent with the People’s case. * * *”
As grounds for reversal of the judgment, argument is presented under four captions as follows:
“I. The Court erred in its instructions to the jury, particularly Instructions Nos. 9, 10 and 11.
“II. The court erred in submitting to the jury forms of verdicts permitting both defendants to be convicted of all three crimes.
“III. The verdicts of the jury were inconsistent and the Court erred in failing to grant the motion for judgment of acquittal made after the verdicts were returned.
“IV. The Court erred in failing to give the tendered instructions of defendants.”
The only argument concerning alleged error in the instructions of the court is addressed to Instruction No. 10. It reads as follows:
“The jury is instructed that under the evidence in this case, before the defendants, either or both of them, can be convicted of the crime of assault with intent to commit murder, as charged in the first count of the information, it must appear from the evidence beyond a reasonable doubt that had the assault resulted in the death of the person assaulted, the crime would have been murder, as hereinafter defined for you.
“Murder is the unlawful killing of a human being with malice aforethought, either express or implied. The unlawful killing may be effected by any one of the various means by which death may be occasioned. All murder which is committed in the perpetration or attempt to perpetrate robbery shall be deemed murder of the first degree.”
Counsel for defendants argue in substance that the instruction is erroneous, first, because it fails to require a finding that the defendants had a specific intent to kill; second, that it erroneously requires a finding of an “hypothetical homicide”; third, that the reference to murder in either the first or second degree, and par *272 ticularly to the “felony murder” statute, has nothing to do with the aggravated assault statute.
The attorney general argues that the instruction contains no prejudicial error, even though it perhaps is not a model of perfection. He further argues that even if the instruction were erroneous,
“* * * it is difficult to perceive how either defendant can derive any benefit therefrom. The defendant Castro was not convicted of assault with intent to commit murder, and the conviction of the defendant Velasquez for this crime was set aside pursuant to his motion, in which the district attorney joined.”
We agree with this last stated conclusion. The defendants were not prejudiced by the giving of Instruction No. 10. Walker v. People, 126 Colo. 135, 248 P.2d 287: Carr v. People, 99 Colo. 477, 63 P.2d 1221; Bunch v. People, 87 Colo. 84, 285 Pac. 766.
With reference to the arguments advanced in support of the second and third assignments of error hereinabove quoted from the brief of counsel for defendants, it is sufficient to say that the reasoning applied in answer to the first assignment is equally applicable to them.
As the case stood in the trial court at the ultimate conclusion thereof, the defendants stood convicted of only one offense, namely, assault to rob. There was an abundance of evidence to support the judgment entered upon this charge. Assuming that there was error in submitting verdicts permitting conviction of more than one assault (which question is not determined by this opinion) the error was cured by the ultimate judicial acquittal on those charges upon which guilty verdicts were vacated. Smaldone v. People, 102 Colo. 500, 81 P.2d 385.
It is argued that the court erred in refusing instructions tendered by the defendants. It is further argued that the witness Manuel Sena was an accomplice and that the defendants were entitled to an instruction *273 that his testimony must be “viewed with suspicion and caution,” and subjected “to minute examination,” and that a conviction could not be based thereon unless it is corroborated by other competent evidence. The trial court refused a tendered instruction containing the above-mentioned cautions.
In Burns v. People, 148 Colo. 245, 365 P.2d 698, the case relied on by the defendants as supporting their position (Moynahan v. People, 63 Colo. 433, 167 Pac. 1175) was expressly overruled. In Burns the applicable test to be observed in determining who may be an accomplice is, “whether the witness himself could be indicted for the offense with which the defendant is charged.” Under this test Sena was not an accomplice.
The guilt of the defendants was clearly established by an abundance of competent evidence. We find no prejudicial error. The judgments entered on the verdicts are affirmed.
Mr. Justice Day, Mr. Justice Hodges, and Judge Mabry* concur.

Retired District Judge sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution. of Colorado.